UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

DAMION COLABATISTTO,

                                    Petitioner,                    15-CR-6128-FPG
                                                                   20-CV-6268-FPG

v.
                                                                   DECISION AND ORDER

UNITED STATES OF AMERICA,

                                    Respondent.

## INTRODUCTION

On April 3, 2017, this Court entered judgment against Petitioner Damion Colabatistto, after

a trial in which Petitioner was found guilty of narcotics conspiracy, unlawful possession/discharge

of a firearm in relation to a drug trafficking crime, and murder in furtherance of a drug trafficking

crime. ECF Nos. 52, 75. The Second Circuit affirmed the judgment. *See* ECF No. 91. Currently

before the Court is Petitioner's motion to vacate his conviction under 28 U.S.C. § 2255. ECF No.

93. The government opposes the motion. For the reasons stated herein, Petitioner's motion is

DENIED.

## BACKGROUND

In his initial motion, Petitioner alleged the following series of events:

On the morning of [trial], approximately 15 minutes before the start of my
scheduled trial, my attorney, Brian Melber, advised me that the United States
Attorney . . . had offered to allow me to enter a guilty plea in exchange for a twenty
five (25) year prison sentence and that I must accept the offer right then due to the
start of the trial.

Mr. Melber advised me to accept the plea offer "because the government does not
lose." I then asked Mr. Melber how much time I could receive if I went to trial and
lost. Mr. Melber[] stated that it would be determined by the Court and sentencing
guidelines, but he expected it would be about the same as the ple[a] offer, 25 years.

I then told Mr. Melber that I did not have an understanding of the law in relation to
the facts requesting he explain this to me. Mr. Melber stated "that I would be
pleading guilty as charged" and that I must make an immediate decision because the
trial was ready to start. I then advised Mr. Melber that I did not participate in

the murder of Meosha Harmon and knew nothing about it.  Mr. Melber stated there
was no time to discuss the matter, that I must make a decision.  I then declined to
accept the plea offer and went to trial and . . . the jury found that I had not
discharge[d] [a] weapon yet I was still convicted and receive[d] a sentence of life
without parole.

Mr. Melber did not advise me prior to trial that a jury could make a finding that I
had not discharged either weapon and was therefore not one of the shooters and still
be guilty of the murder and receive a sentence of life without parole.  Had Mr.
Melber done so, I would have accepted the plea offer.

ECF No. 93 at 5, 14-15.  Petitioner also claimed that, due to a jail policy, he was never permitted

"to have physical possession of legal papers or documents about [his] case."  *Id.* at 5.  He alleged,

"The only time that I could review [discovery] related documents or legal papers was via laptop

during attorney visits with [Attorney Melber].  I was never able to fully understand the charges or

what was going on in my case."  *Id.*

Based on the allegations in the initial motion, the crux of Petitioner's claim was that

Attorney Melber surprised him with a plea offer on the morning of trial, and, instead of providing

Petitioner with the information necessary to determine whether to accept the plea or go to trial,

Attorney Melber rushed him into making an uninformed decision.  Without his counsel's guidance,

Petitioner was unable to make an adequate assessment of his case, as he had not had access to

discovery.  As relief, Petitioner requested that the "government reoffer the plea deal of 25 years."

*Id.* at 12.

After Petitioner's motion was filed, the government filed its opposition, and Attorney

Melber submitted affidavits and his contemporaneous notes concerning the plea offer.  That record

undercuts many of Petitioner's factual allegations and fails to support Petitioner's central claim

that he had a few minutes to make a wholly uninformed decision about whether to accept the plea.

The record establishes the following.  In September 2015, Petitioner was indicted on

charges of narcotics conspiracy and possession/discharge of firearms in furtherance of a drug

trafficking crime.  ECF No. 3.  Petitioner was alleged to be part of a drug trafficking conspiracy

2

based in the Rochester area.  In May 2016, the government filed a superseding indictment, adding a third count for murder in furtherance of a drug trafficking crime.  ECF No. 17.

On October 3, 2016—the day before trial—Attorney Melber reached out to the government to discuss the possibility of a plea.  *See* ECF No. 102 at 6.  The government suggested a possible plea of "30 or possibly 25 years," though supervisory approval was necessary.  *Id.*  Trial began the next day with jury selection.  No formal plea offer was extended that day, but the parties noted on the record that a plea in the range of twenty-five to thirty years was possible.  *See* ECF No. 113 at 2-3.  Attorney Melber's contemporaneous notes indicate that he met with Petitioner that day and "indicated that if the Government makes a[] [formal] offer to 25 years or less I would recommend that and [] encourage[] you to consider the possibility."  ECF No. 102 at 6.

The next morning, on October 5, 2016, the government extended a fully approved plea offer to twenty-five years' imprisonment.  The record is not clear on this point, but the offer appears to have required that Petitioner plead guilty to all three charges.  *See* ECF No. 93 at 15 (stating that Petitioner would "plead[] guilty as charged").

Attorney Melber discussed the matter with Petitioner, describing the possible penalties he faced, explaining his views on the strength of the government's case, and encouraging him to take the offer.  *See* ECF No. 102 at 2, 6; ECF No. 106 at 2.  Attorney Melber disputes Petitioner's claim that he told Petitioner he would receive a twenty-five year sentence if he lost at trial.  Although he does not recall the details of his conversation, Attorney Melber does not believe he would have made such a statement, since the "bottom end of the guidelines range facing [Petitioner] . . . was greater than 25 years."  ECF No. 102 at 2.  To the contrary, he recalls telling Petitioner he faced "a significantly longer prison sentence if he was convicted of all counts" at trial.  ECF No. 106 at 2.

Attorney Melber was also able to arrange for Petitioner to speak with his daughter's mother about the offer. *See* ECF No. 102 at 6. She, like Attorney Melber, encouraged Petitioner to take the offer. However, Petitioner rejected the offer on October 5. Nevertheless, the government agreed to hold the offer open until the next morning, October 6, 2016, and provided Petitioner with a written plea agreement to consider that night.

On the morning of October 6, 2016, Attorney Melber met with Petitioner, who "indicated [he] would not accept the plea offer." ECF No. 102 at 7. Attorney Melber again recommended that Petitioner accept the offer, but Petitioner declined. Thereafter, the government withdrew the offer. *See* ECF No. 82 at 4.

This record presents a starkly different picture of the events than Petitioner's initial motion. Petitioner had a full day to consider the plea offer—not fifteen minutes. Attorney Melber discussed the strengths and weaknesses of the government's case and explained the possible penalties—he did not refuse to provide assistance to Petitioner. Attorney Melber told Petitioner that he faced "a significantly longer prison sentence" if convicted at trial—he did not tell Petitioner that he would receive a twenty-five year term of imprisonment. Attorney Melber did not rush Petitioner to make a decision in a few minutes—Petitioner had a full day to consider the offer, and Attorney Melber went so far as to arrange for Petitioner to speak with his daughter's mother about the matter.

In response to the government's brief and Attorney Melber's affidavits, Petitioner submitted a letter. *See* ECF No. 108. In that letter, Petitioner does not challenge the narrative set forth in Attorney Melber's contemporaneous notes or affidavits; nor does he attempt to re-assert his factual claims that he only had fifteen minutes to consider the plea and received no guidance from Attorney Melber. Indeed, he seems to retract his claim that Attorney Melber advised him he would receive a twenty-five year sentence if he lost at trial, acknowledging that he may not have understood "what Mr. Melber was trying to explain." *Id.* at 2.

4

Instead, Petitioner more broadly alleges that he simply was not equipped to decide whether to accept the plea offer. He states that he had "very limited access to discovery" and, on the eve of trial, was feeling "overwhelmed with [his] case." *Id.* at 1. Petitioner asserts that, at that time, he was not "prepared or [properly] educated to make a decision of that importance." *Id.* at 2. Petitioner writes, "I declined the offer, and later realized if I had more time to educate and responsibly consider my options, I would [have] took the plea offer." *Id.* at 3.

## DISCUSSION

Petitioner's motion explicitly raises three claims: (1) insufficiency of the evidence with respect to his intent; (2) denial of due process; and (3) ineffective assistance of counsel. *See* ECF No. 93 at 4-5. The first two claims do not merit extended analysis, so the Court will briefly address them before examining Petitioner's claim for ineffective assistance of counsel.

First, Petitioner asserts that the government "did not satisfy the knowledge requirement announced in *Rehaif v. United States*, 139 S. Ct. 2191 (2019)." *Id.* at 4. This claim is substantively identical to a claim Petitioner raised on direct appeal. By way of background: in its verdict, the jury found that Petitioner had not discharged a firearm during the course of the narcotics conspiracy. ECF No. 52 at 2. On direct appeal, Petitioner argued that (1) he could not be found directly liable for the shooting and murder of the victim, since the jury found he had not "discharged" a firearm; and (2) he could not be found vicariously liable for the murder based on his involvement in the underlying conspiracy, as there was insufficient evidence to support a vicarious-liability theory. The Second Circuit rejected that line of argument. *See United States v. Colabatistto*, 762 F. App'x 38, 41-42 (2d Cir. 2019) (summary order).

Though Petitioner attempts to reframe his argument in terms of *Rehaif*—an inapposite case—in substance he merely reiterates the same rejected line of argument. Because this Court

"cannot revisit issues already decided on direct appeal," *Jones v. United States*, No. 11-CV-3700, 2012 WL 3288749, at *2 (E.D.N.Y. Aug. 9, 2012), Petitioner may not obtain relief on this ground.

Second, Petitioner's reference to "denial of due process" is unclear, but the Court reads his motion to mean that he is challenging the government's actions with respect to the plea offer. Specifically, Petitioner criticizes the government's late offer and wishes he had more time to consider the plea. Nevertheless, it is well-established that "there is no constitutional right to plea bargain." *Weatherford v. Bursey*, 429 U.S. 545, 561 (1977). By extension, a prosecutor has no obligation to hold an offer open for any pre-defined period of time. *See United States v. Springs*, 988 F.2d 746, 749 (7th Cir. 1993) (noting that prosecutors "may withdraw their offers on whim"); *United States v. Pleasant*, 730 F.2d 657, 664 (11th Cir. 1984) (rejecting due-process claim that "government did not give [defendant] adequate opportunity to accept a plea bargain" and opining that, like "any offeror," a prosecutor can "withdraw his offer at any time"). Petitioner cannot obtain relief on the theory that the government should have given him more time to consider the offer.

With those claims resolved, the Court turns to Petitioner's arguments on ineffective assistance of counsel. Reading his materials liberally, Petitioner contends that Attorney Melber (1) did not provide him with discovery, (2) did not fully explain the charges or the government's evidence; (3) did not accurately explain the penalties he faced if he was convicted after trial; and (4) failed to explain the concept of *Pinkerton* liability with respect to the murder charge.[1] For the reasons discussed below, Petitioner is not entitled to relief.

Relief "is generally available under [Section] 2255 only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes 'a fundamental defect

---

[1] Given the state of the record, the Court need not address Petitioner's now-undermined allegations that he only had fifteen minutes to accept the plea offer; was badgered to make a decision within that short timeframe; and received no guidance from Attorney Melber. *See* ECF No. 93 at 14-15.

which inherently results in a complete miscarriage of justice.'" *United States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)).  "In ruling on a motion under [Section] 2255, the district court is required to hold a hearing '[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief.'" *Gonzalez v. United States*, 722 F.3d 118, 130 (2d Cir. 2013) (quoting 28 U.S.C. § 2255(b)).  Ineffective assistance of counsel is a claim that may be raised through a § 2255 motion.  *See United States v. Vallejo-Zamora*, 827 F. App'x 156, 156-57 (2d Cir. 2020) (summary order).

"To succeed on an ineffective assistance of counsel claim, a petitioner must demonstrate that (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defense." *Estevez v. United States*, No. 19-CV-1362, 2020 WL 4462900, at *2 (D. Conn. Aug. 4, 2020) (internal quotation marks omitted).  "The Supreme Court has held that this two-part test applies to ineffective assistance challenges in the plea bargain context, including when a defendant claims that ineffective assistance led him to reject a plea offer and instead stand trial." *Id.* (internal quotation marks and citation omitted).  "If a plea bargain has been offered, a defendant has the right to effective assistance of counsel in considering whether to accept it. If that right is denied, prejudice can be shown if loss of the plea opportunity led to a trial resulting in a conviction on more serious charges or the imposition of a more severe sentence." *Lafler v. Cooper*, 566 U.S. 156, 168 (2012).

To show prejudice in the context of a rejected plea offer, the petitioner must show, *inter alia*, that he "would have accepted the plea" but for the ineffective assistance of counsel.  *Id.* at 164.  A Court need not accept a defendant's conclusory, self-serving statement that he would have accepted a plea absent ineffective assistance of counsel.  *See Cooper v. United States*, No. 13-CV-3765, 2015 WL 9450625, at *9 (S.D.N.Y. Dec. 22, 2015).  But a defendant "is entitled to an evidentiary hearing on this issue if his statement is supported by some objective evidence." *United*

*States v. Belfiore*, No. 15-CR-242, 2020 WL 4032509, at *11 (E.D.N.Y. July 14, 2020) (internal brackets and citation omitted).

In this case, no evidentiary hearing is necessary, because the record before the Court conclusively shows that Petitioner is not entitled to relief.  Petitioner has failed to present sufficient objective evidence that he would have accepted the plea offer but for Attorney Melber's alleged errors.

In his motion papers, the only explanation Petitioner gives for rejecting the plea is that he "did not participate in the murder of Meosha Harmon and knew nothing about it."  ECF No. 93 at 15.  While not dispositive, that profession of innocence undercuts the credibility of his present claim that he would have pleaded guilty had he been better informed.  *See, e.g.*, *Cullen v. United states*, 194 F.3d 401, 407 (2d Cir. 1999).

More to the point, Petitioner largely fails to explain *in what respect* he was uninformed. That is, he does not identify what specific information would have led him to plead guilty had Attorney Melber provided it.  Petitioner only vaguely references the lack of discovery, failing to identify what evidence he wishes he knew before proceeding to trial.  *See Johnson v. United States*, No. 18-CV-943, 2019 WL 266210, at *5 (D. Md. Jan. 18, 2019) ("[T]hough [defendant] asserts that Counsel did not review all discovery with him, he does not specify how the lack of a more lengthy or robust review of discovery with Counsel caused prejudice."); *Yannai v. United States*, 346 F. Supp. 3d 336, 348 (E.D.N.Y. 2018) (petitioner's conclusory statement that he "was unable to obtain the discovery that he needed to be fully informed" was "insufficiently detailed to support his assertion that he might have pleaded guilty if given access to this material").

Similarly, Petitioner contends that he did not "fully understand" his charges or his case, but this claim too lacks the necessary specificity.  *See* ECF No. 93 at 5; *see also Diaz v. United States*, No. 14-CR-442, 2017 WL 112609, at *1 (S.D.N.Y. Jan. 11, 2017) (rejecting as conclusory

claims that counsel failed to respond to unspecified "request for information" and did not advise defendant of the "correct options available").

The only information Petitioner identifies with specificity are his ignorance of the possible penalties and his ignorance of *Pinkerton* liability.  While specific, neither allegation can support his claim for ineffective assistance of counsel.

As to his ignorance of possible penalties, Petitioner's claim that he was unaware of the possible penalties is contradicted by the record.  Attorney Melber avers, and the Court credits, that he told Petitioner that he "face[d] a significantly longer prison sentence if he was convicted of all counts."  ECF No. 106 at 2; *see also Chang v. United States*, 250 F.3d 79, 86 (2d Cir. 2001) (stating that a court may credit counsel's affidavit without holding an evidentiary hearing).  Furthermore, as the government points out, Defendant was arraigned on all three charges less than six months before his trial, and received notice of the possible penalties he faced.  *See* ECF No. 105 at 1, 3-4. It is thus evident that, at the time he rejected the plea offer, Petitioner was aware of the penalties he faced if he lost at trial, and thus could not have believed he only faced a twenty-five year sentence.

As to *Pinkerton* liability, Petitioner claims that he did not understand that he could be found vicariously liable for the murder even if he did not actually fire the firearm that killed the victim. *See* ECF No. 93 at 15; *see also Colabatistto*, 762 F. App'x at 41-42 (explaining *Pinkerton* liability). To the extent Petitioner is suggesting, albeit vaguely, that he rejected the plea offer based on his misunderstanding of *Pinkerton* liability, that claim is inconsistent with his other allegation that he rejected the offer because he was wholly innocent of any involvement in the murder "and knew nothing about it."  ECF No. 93 at 15.  In other words, Petitioner's assertion is not only conclusory, it is internally inconsistent with his other allegations.  *Cf. Smith v. McGinnis*, No. 02-CV-1185, 2003 WL 1488090, at *6 (S.D.N.Y. June 25, 2003) (declining to hold evidentiary hearing on §

2254 petition, where, *inter alia*, petitioner made conflicting statements about counsel's alleged errors).

Furthermore, the Court fails to see how Petitioner's alleged misunderstanding about *Pinkerton* liability can be attributed to Attorney Melber.  Assuming Petitioner's allegations to be true, all the record shows is that (1) Attorney Melber advised Petitioner the murder charge was the weakest in the government's case, and (2) Attorney Melber failed to clarify the niceties of criminal vicarious liability.  There are no allegations that suggest that Attorney Melber affirmatively lulled Petitioner into believing what Petitioner now claims—namely, that despite his involvement in the conspiracy, he could not be found guilty of murder so long as the jury determined that he did not discharge the firearm.  To the contrary, Attorney Melber unequivocally attempted to disabuse Petitioner of the notion that he had a strong defense—he repeatedly advised Petitioner to accept the offer and warned him that the "government does not lose."  ECF No. 93 at 14.  At least based on the present record, if Petitioner did in fact proceed to trial based on his misunderstanding that such a defense was viable, it was *despite* Attorney Melber's advice, not *because* of it.  *See Vidro v. United States*, No. 01-CV-1309, 2003 WL 22871691, at *2 (D. Conn. Dec. 1, 2003) (ineffective assistance of counsel claim cannot be based on defendant's subjective misunderstanding of counsel's advice).

Ultimately, if the record reveals anything, it is that Petitioner was intent on proceeding to trial.  At the time the plea offer was tendered, Petitioner was aware that he faced a significantly longer prison sentence if he lost at trial; he was aware of his counsel's advice that the "government does not lose"; and he had been repeatedly advised by counsel and his family friend to accept the offer.  Despite all of this, Petitioner still rejected the plea offer.  The reason he gave to Attorney Melber was that he was innocent of any involvement in the murder.   These circumstances demonstrate that Petitioner, regardless of Attorney Melber's advice, "was extremely unlikely to

accept any guilty plea." *Belfiore*, 2020 WL 4032509, at *21 (collecting cases). Petitioner's conclusory and inconsistent claims to the contrary do not suffice to warrant an evidentiary hearing on the matter, let alone relief. Accordingly, Petitioner cannot demonstrate prejudice, and his claim for ineffective assistance of counsel is therefore rejected.

The Court recognizes that Petitioner believes he did not have enough time and was not in the right frame of mind to appropriately consider the plea offer. *See generally* ECF No. 108. Attorney Melber echoes this sentiment. *See* ECF No. 106 at 2. It may very well be true that Petitioner felt overwhelmed by the choice set before him, and that, with the benefit of hindsight, he believes he chose wrongly. But the question before the Court is not whether, as a matter of equity or fairness, Petitioner should have been given more time to consider the offer; the question is whether there has been a constitutional error warranting habeas relief. For the reasons discussed above, the Court answers that question in the negative.

## CONCLUSION

For the foregoing reasons, Petitioner's motion to vacate (ECF No. 93) is DENIED. Because Petitioner has failed to make "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), a certificate of appealability is DENIED. The Clerk of Court is directed to close the civil case associated with the petition (Case No. 6:20-CV-6268-FPG).

IT IS SO ORDERED.

Dated: December 18, 2020
Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court